[No. 31922. Department One. September 12, 1952.]

*In the Matter of the Estate of* JANET DAND, *Deceased.*[1]

[1]Reported in 247 P. (2d) 1016.

*Griffin & Griffin* and *Max R. Nicolai,* for appellants.

*Jones, Birdseye & Grey, Albert Olsen* (*E. F. Bernard* and *William W. Wells,* of counsel), for respondents.

WEAVER, J.—This is an appeal from a decree holding for naught the will of Janet Dand dated March 19, 1943, annulling and revoking the probate thereof, and admitting to probate her will dated December 29, 1941.

Decedent died December 10, 1950, at the age of 92. She had been blind for fifteen years preceding her death.

Respondents, Jennie M. Meiners and Myrtle J. Klein, two of her daughters, contested the will which had been admitted to probate. The contest was resisted by the Seattle Trust and Savings Bank, executor; by two other daughters, Mabel I. Haw and Marion Smith; a son, John; and a granddaughter, Janet Jarvis. Another granddaughter, Edith Hudson, was present at the trial but did not appear by counsel.

After an extended trial, the trial court entered the following pertinent conclusions of law:

"I. That the will signed by Janet Dand on March 19, 1943, and filed herein on December 19, 1950, is not the valid will of the decedent because of the fraud and undue influence exerted by Mabel I. Haw.

"II. That the will signed by Janet Dand on December 29, 1941, and witnessed by Lillian Smith (Hoyez) and John F. Reed is the last valid Will and Testament of Janet Dand."

These conclusions were based upon detailed findings of fact. Summarized quite briefly, the trial court found: That decedent owned an estate exceeding three hundred thousand dollars in value at the time of her death; that for many years prior to 1943, decedent, except for her plan to devise a half-section of Canadian land to her granddaughter, Edith Hudson, had manifested an intention to treat her four daughters substantially the same in the distribution of her estate; that she disinherited her son, John, by will in 1940,

because of debts contracted by him, but later gave him a small life income from a trust fund; that this intention had been expressed in three wills (two executed and one prepared by counsel but not signed) made by decedent prior to the will of March 19, 1943; that, from the death of her husband in 1916 to the early part of 1943, decedent had relied heavily upon her daughter, Jennie, for advice on business matters, and reposed in her the utmost confidence; that Jennie lived in Oregon and managed the Oregon ranch in good faith.

Specifically, the court found:

"IX. That some time during the latter part of 1942 and early 1943, the respondent, Mabel I. Haw, made *false and untrue* statements to her mother, Janet Dand, about the petitioner, Jennie M. Meiners, and that such statements were to the effect that Jennie M. Meiners had obtained control of the Seattle properties, that she had mismanaged or failed to account for the earnings of the Oregon properties of the decedent, and had sided with Myrtle Klein in an insanity proceeding instituted in February, 1943, against Marion Smith. That said statements were untrue and had the effect of alienating or prejudicing the mind of the decedent, Janet Dand, against her daughter, Jennie M. Meiners. (Italics ours.)

"X. Said Mabel I. Haw took an active part in forcing Myrtle Klein out of the house of her mother in early 1943 and excluding her therefrom, and at least on one occasion in late 1942 or early 1943, physically attacked said Myrtle Klein and threatened to kill her, and at that time manifested an intense dislike towards Myrtle Klein, and it is inferable from the facts that Mabel Haw endeavored to alienate her mother against Myrtle Klein by over-emphasizing the seriousness of an insanity proceeding initiated by Myrtle Klein, and telling falsehoods about Myrtle Klein."

The trial court found that, from February, 1943, until decedent's death, Mabel I. Haw, who "is physically strong in appearance and of a domineering nature," had full charge of the household. The court further found that decedent, subsequent to March 19, 1943, had no opportunity to discuss freely her true testamentary wishes with an impartial ad-

viser and put them into effect because of her blindness, age, and dependence upon Mabel.

The findings of fact continue:

"XII. That some time early in February of 1943, said Mabel Haw insisted over the objection of her mother, Janet Dand, that the said Janet Dand terminate the services of John Reed, who had acted as Janet Dand's attorney for the previous approximate seven years. That said Janet Dand expressed herself as not wanting to change attorneys, but said she was forced to do so by her daughter, Mabel I. Haw. That immediately upon the termination of the services of John F. Reed, said Mabel Haw took her mother to the offices of [we omit the name], an attorney of Mabel I. Haw's choosing, for the purpose of discussing the preparation of a will and handling other legal matters for Janet Dand.

"XIII. That on March 19, 1943, the respondent, Mabel I. Haw, brought her mother to the law office of [we omit the name] in Seattle, Washington, at which time the will filed herein under date of December 19, 1950, was read, signed and witnessed; and that Mabel I. Haw was present in the room throughout the reading, signing and witnessing of said will . . .

"XIV. That said Mabel I. Haw actively participated in the preparation and procurement of the will of March 19, 1943. [The record discloses that the lawyer drafting the will of March 19, 1943, did not participate in any manner in influencing the testator.]

"XV. That considering the family background, prior testamentary intention of the deceased, and other attendant circumstances, the will executed on March 19, 1943, provided for an unnatural distribution of decedent's estate, and contained other unnatural provisions.

"XVI. That during the period from March 9, 1943, to March 19, 1943, being the period immediately preceding the execution of the will in question, only Mabel I. Haw and Marion E. Smith of the deceased's four daughters had access to the mother or talked with her.

"XVII. That following the execution of said will, its terms and provisions thereof, although known to Mabel I. Haw, one of the daughters, was kept secret from petitioners, Jennie Meiners and Myrtle Klein. . . ."

"XIX. That the facts set forth herein, when considered in connection with other facts and circumstances disclosed by the evidence, show that said Mabel I. Haw exercised undue

influence over her mother at the time of execution of the will, and made false representations to the decedent with respect to the petitioners, Jennie M. Meiners and Myrtle J. Klein, which were believed by the decedent and had a controlling influence over her at the time of the execution of said will, and affected the disposition and feelings of said Janet Dand towards said Jennie M. Meiners and Myrtle J. Klein."

■ Our scope of review is confined to a determination of whether the evidence clearly preponderates against the findings of fact made by the trial court. *Brown v. VanTuyl,* 40 Wn. (2d) 364, 242 P. (2d) 1021 and cases cited.

The record is replete with detailed evidence, inconsistent and conflicting upon most material issues. It would add nothing to the case authority of this jurisdiction to discuss it at length. The evidence includes accusations of theft, alleged confiscation of property, an insanity charge against one of the sisters, a legal action of eviction from the family home against another, a charge of attempted poisoning, excessive drinking, personal fights, neighbors calling the police to the Dand home, an alleged attack with a hammer, locked doors, prowling at night, alleged striking of decedent by Mabel and John, and general family discord.

The crux of the whole situation was the alleged fraud practiced by Mabel in poisoning her mother's mind against Jennie and Myrtle with untruths so that she unduly influenced decedent to make the will of March 19, 1943, in which contestants (Jennie and Myrtle) were devised only a token share of the entire estate. We are not unmindful that

" . . . in such cases it may well be difficult for one seeking to uphold a will to establish, by affirmative evidence, the negative proposition that no undue influence was exerted in the procurement of the will." *In re Soderstran's Estate,* 35 Wn. (2d) 448, 464, 213 P. (2d) 949.

However, the trial judge, in his memorandum opinion, to which both appellants and respondents refer in their briefs, said:

"My conclusion about Mrs. Haw is that I would not believe her on any point on which she was contradicted by

other evidence, whether direct or circumstantial. . . . The five-year period between March, 1943, and the 1948 guardianship adds no strength to the will under attack, under the conditions shown by the evidence. Mrs. Haw completely controlled Mrs. Dand's movements and access to information. The will was kept secret from the contestants, and the fraud by which it had been procured was never revealed to the testatrix."

■ This case is a striking example of the wisdom of our rule that the trial court, having the witnesses before it, is in a better position to arrive at the truth than is the appellate court. The respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court. Two different theories were presented. The trial court rejected one and accepted the other. After an examination of the record, we cannot say that the evidence preponderates against the findings.

■ The facts as found by the trial court, and which are supported by the evidence, meet the test of fraud as laid down by this court in In re Bottger's Estate, 14 Wn. (2d) 676, 701, 129 P. (2d) 518, where we said:

"In the case where a will is attacked because allegedly induced by fraud, it may be avoided, not because the testator's mind was coerced, but because his mind was deceived. The will is actually the free and voluntary act of the testator and expresses his wishes at the time, but it is subject to attack on the ground that his disposition of his estate was based upon false data as the result of fraudulent representations made by, or on behalf of, the person or persons benefiting from his will as made. There is thus a real distinction between fraud and undue influence. Atkinson, Wills (1937) 218, § 97; 68 C. J. 740, Wills, § 433; note (1934) 28 A. L. R. 787, 792. In 1 Page, Wills (Lifetime ed. 1941) 353, § 179, this type of fraud is defined as follows:

" 'Fraud in the inducement consists of wilfully false statements of fact other than those relating to the nature of contents of the instrument, made by a beneficiary under the will which is thus induced, which are intended to deceive testator, which do deceive him, which induce him to make a will, and without which he would not have made such a will.'

"Expressed otherwise, the representations must be with reference to extrinsic facts, and must be made to the testator by, or on behalf of, a person benefiting under the will; the statements must be false and must be known to be so by the person making them (although in some circumstances mere suppression of the facts may be sufficient to constitute fraud); and the facts misrepresented must be material and must induce the making of the will in question. See Atkinson, Wills, (1937) 221, § 99."

■ The trial court found the existence of undue influence as well as the existence of fraud. Since either is sufficient under our statute (RCW 11.24.010) to invalidate a will, it would unduly extend this opinion to elaborate upon and apply the rules applicable to undue influence.

"Fraud (and this involves bad faith on the part of its perpetrator) wilfully deceives free agency; undue influence overmasters it. . . ." Re Gluckman's Will, 87 N. J. Eq. 638, 641, 101 Atl. 295.

It is sufficient to say that the facts found by the trial court, and which are supported by the evidence, also comply with the rules of law applicable to undue influence.

The findings of fact support the conclusions of law entered by the trial court. Appellant's assignments of error 1, 2, 3, 8, 9, and 10 are without merit.

■ A month after the trial judge rendered his first oral decision, appellants made an oral motion to reopen the case in order to introduce certain documentary evidence. The effect of the evidence sought to be adduced was remote. Its only effect would have been to show bias on the part of Jennie and Myrtle against Mabel in 1948, five years after the will had been made. That Jennie and Myrtle were not on friendly terms with Mabel at this, and other times, was taken into consideration by the trial judge, as it would, of necessity, be taken into consideration by anyone examining the record in this case. The denial of a motion to reopen the case for additional testimony was a proper exercise of judicial discretion. There is nothing in the record from which we can say that the discretion was abused. *Haveman v. Beulow*, 36 Wn. (2d) 185, 217 P. (2d) 313.

■ Assignments of error 5 and 6 are directed to the court's refusal to grant a motion for a new trial and in denying the motion without giving "definite reasons of law and facts for so doing" as required by Superior Court Rule 16, 34A Wn. (2d) 117. The order denying the motion for a new trial was approved as to form by counsel for appellants. They cannot now on appeal, for the first time, raise a question as to the sufficiency of the form of the order.

Appellants, assuming for the purpose of argument that this court disagrees with their position that Mabel I. Haw was not guilty of any wrongdoing, urge that setting aside the will of March 19, 1943, would deprive the other beneficiaries of their legacies and would, as they termed it in their brief, amount "to a case of burning the barn to roast the pig." They argue that:

"If this court were to remove Mabel Haw as co-executrix and co-trustee of the will under consideration, and take from her the additional 1½ sections of Canadian land give(n) to her under the will of March 19, 1943, this will far better expresses the intentions of the testatrix than the result reached by the trial court. . . ."

This argument is based upon the theory that parts of a will may be held valid and enforceable notwithstanding the fact that other parts have been affected by fraud and undue influence and are invalid. To permit application of this theory, the parts of the will affected by fraud or undue influence, must be separable so that the will would remain complete in itself after their removal. If, however, the provisions of the will are so interdependent that they cannot be separated without defeating the general intent of the testator, then the doctrine cannot be applied. *In re Carothers' Estate*, 300 Pa. 185, 150 Atl. 585, 69 A. L. R. 1127.

On the other hand, it was held in *Snyder v. Steele*, 304 Ill. 387, 136 N. E. 649, 28 A. L. R. 1, and in *McCarthy v. Fidelity Nat. Bank & Trust Co.*, 325 Mo. 727, 30 S. W. (2d) 19, 69 A. L. R. 1122, that the doctrine could not be applied to cases under will contest statutes fixing the issue to be *devisavit vel non*: "is the instrument in question the last will and testament of testator or not."

RCW 11.24.010 provides in part:

". . . Issue shall be made up, tried, and determined respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of such last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of such will. . . ."

The statute ordains that fraud in the inducement affects the "validity" of the will.

RCW 11.24.040 provides that if

". . . the will is for *any* reason invalid . . . the will and probate thereof shall be annulled and revoked, and thereupon the powers of the executor or administrator with the will annexed shall cease. . . ." (Italics ours.)

We need not decide this engaging question urged by appellants under our statutes for two reasons: First, to adopt the theory advanced, would, under the evidence of this case, result in the court's writing a different will for the decedent. Second: We would be forced to ignore the conclusion of the trial court:

"That the will signed by Janet Dand on December 29, 1941, and witnessed by Lillian Smith (Hoyez) and John F. Reed is the last valid Will and Testament of Janet Dand."

We cannot do the first. As to the second, the evidence does not preponderate against the findings supporting this conclusion. We cannot disturb it.

Appellant's assignments of error 5 and 6 are without merit.

Appellant's seventh assignment of error is directed against (1) the admission of certain alleged incompetent, irrelevant and immaterial evidence; and (2) the admission of evidence prohibited by RCW 5.60.030 (Rem. Rev. Stat., § 1211).

■ When the issue is fraud, and the cause is tried to the court, a wide latitude is allowed in the introduction of evidence. This is especially true when a will is contested for fraud in its inducement. 2 Page, Wills, (Lifetime ed.) 714, § 869. The evidence to which objection was made had a tendency, however remote, if believed, to aid in establishing fraud.

 Appellants concede that the testimony of conversations allegedly had by the respondents and appellants with the decedent was admitted without objection. By not making timely objections, the appellants waived the bar of the statute. *Ellis v. Wadleigh*, 27 Wn. (2d) 941, 182 P. (2d) 49. Appellants argue, in an attempt to avoid the effect of this rule, that the evidence thus admitted is not entitled to any weight. With this we cannot agree. It was entitled to the same credence and weight as any other evidence received.

The decree is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and OLSON, JJ., concur.

November 20, 1952. Petition for rehearing denied.

