[No. 33159. Department One. June 23, 1955.]

ANNA MURANTE, *Respondent,* v. JACK RIZZUTO, *as Executor, Appellant.*[1]

[1]Reported in 285 P. (2d) 560.

*Lyle Von Erichsen* and *T. G. Patterson,* for appellant.

*Victor J. Felice* and *Anthony J. Felice,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment in favor of the plaintiff on a rejected claim against the estate of Concetta Pistelle, deceased, for "funds held by deceased belonging to Mrs. Murante."

Anna Murante was born in Italy, and is sixty-seven years of age. She married one Pasquale Pistelle, who died in Italy in 1914. The record does not indicate when she came to America, but it does show that her second husband, Michael Angelo Murante, died in New York in 1940.

Frank Pistelle, brother of Anna's first husband, and his wife, Concetta, owned and operated a farm near Bigelow Gulch, in Spokane county. In 1941, Frank sent money to Anna, in New York, for her to come to Spokane and help with the farm work. She arrived in July, 1941, and worked exclusively on the farm until October, 1942, when she secured employment as a laborer with the Western Fruit Express Company. She remained so employed until January 23, 1953, and during her employment she earned over twenty thousand dollars. In addition to her employment, she continued to work on the farm, arising as early as four o'clock in the morning and often working as late as midnight. She did the chores, milking cows, feeding the animals, gathering hay, and doing housework.

In 1944, Concetta suffered a stroke. At that time, Frank had cancer of the nose, which finally resulted in his death. July 25, 1944, Frank and Concetta deeded the farm and a

house in Spokane to Anna, apparently with some sort of understanding that she would support them for the rest of their lives. However, Frank continued working actively around the farm. He sold several cattle through the Spokane Livestock Commission Company. The proceeds of these sales were deposited in a savings account. Shortly before he died, he withdrew all of these funds and opened a new account in Concetta's name. Concetta died testate on January 18, 1954. Jack Rizzuto was named executor of her last will and testament. She left small bequests to the daughters of her friend Mary Rizzuto, and their brother Jack, the executor, was named as residuary legatee.

Contending that the cattle sold by Frank were owned by her, Anna filed a claim against the estate for $7,200 on account of "conversion of personal property." The claim was rejected, and this action was commenced thirty-seven days later. A demurrer was interposed, but before it was argued, an amended claim was filed for the sum of $6,561.34 on account of "funds held by the deceased belonging to Mrs. Murante." The amended claim was rejected and an amended complaint filed. Trial was had on the theory of money had and received. The trial court granted judgment for the plaintiff, and this appeal follows.

Error is assigned in overruling defendant's demurrer; in admitting the testimony of Berardino Primiana; in entering certain findings of fact and conclusion of law No. 1; in entering judgment for the plaintiff; and in denying motion for a new trial.

The findings to which errors are assigned are briefly that, from 1944 to the time of trial, the plaintiff was the owner of cattle purchased for the farm, the issue of said cattle, and the cattle on the farm at the time of transfer; that plaintiff paid all operating expenses of the farm from her own personal funds; that any and all purchases of supplies, livestock, and other needs of the farm by Frank Pistelle were with plaintiff's funds; that the payment of any and all bills necessary for the operation of the farm by Frank were made with plaintiff's funds; that the sum of $6,561.34 was paid to Frank by the Old Union Stockyards

from the sale of plaintiff's livestock; that these funds belonged to plaintiff and no portion thereof had been paid to her; that she did not know that the funds were not set aside to her until Concetta's death; that the funds in Concetta's estate were received by Frank from the sale of plaintiff's livestock. The court concluded that plaintiff was entitled to recover from defendant the sum of $6,561.34, plus costs.

■ Appellant contends that the action was not timely filed after the rejection of the creditor's claim against the estate. In *In re Krueger's Estate*, 145 Wash. 379, 260 Pac. 248, we said:

"But we . . . hold that a claim, although served and filed, may, upon rejection by the executor, be abandoned and a new one filed and served, provided always that it be served and filed within the six months period."

That is the situation here. The first claim was abandoned after rejection, and a new claim filed, all within the six months' period. This action is based on the new claim and is, therefore, timely commenced.

■ Did the complaint state a cause of action against the Concetta Pistelle estate? It was alleged that the deceased, Frank and Concetta Pistelle, sold livestock belonging to plaintiff, and it was further alleged that the funds in the estate of Concetta Pistelle are funds received from the sale of plaintiff's livestock. Since this is an action for money had and received, those allegations are sufficient to state a cause of action against the estate. *King County v. Odman*, 8 Wn. (2d) 32, 111 P. (2d) 228, 133 A. L. R. 1440. In *Halver v. Welle*, 44 Wn. (2d) 288, 266 P. (2d) 1053, we said:

"Under the doctrine of quasi-contracts, the law imposes a fictitious promise that one will render to a person entitled thereto that which in equity and good conscience belongs to the latter."

See, also, *Bill v. Gattavara*, 34 Wn. (2d) 645, 209 P. (2d) 457; *Cone v. Ariss*, 13 Wn. (2d) 650, 126 P. (2d) 591; *Seekamp v. Small*, 39 Wn. (2d) 578, 237 P. (2d) 489.

■■ The next assignment of error is directed to the

admission of the testimony of Berardino Primiana, Anna's son-in-law, and now, with his wife, joint owner of the farm by virtue of her deed to them. He testified that Frank told him that both the farm and livestock belonged to Anna. Appellant contends that this was inadmissible under the hearsay rule. Frank's statement was an admission against interest, and, as such, was admissible as an exception to the hearsay rule. *Fowles v. Sweeney,* 41 Wn. (2d) 182, 248 P. (2d) 400; *Allen v. Dillard,* 15 Wn. (2d) 35, 129 P. (2d) 813.

Neither was this testimony inadmissible under RCW 5.60.030 (Rem. Rev. Stat., § 1211), since the witness was not a party in interest. The fact that he was related to the plaintiff would affect only the weight of the testimony, not its admissibility.

Appellant's principal argument is directed to the claimed failure of the evidence to sustain the finding that the plaintiff was the owner of the cattle. We shall briefly outline the testimony on this issue.

FOR THE PLAINTIFF:

*Anna Murante* (interested witness). Got home from work at three-thirty and worked until midnight. Arose at four a.m. and did chores until she went to work at six-thirty. (All witnesses agree that Anna worked on the farm and in the house.) Could not remember how many cattle she purchased between 1944 and 1952; sometimes 2, sometimes 3, sometimes 4—the last purchase, 10. It was her money that purchased all of the cattle between 1944 and 1952. Between 1937 and 1953, she earned $20,234.61 at Western Fruit. Spent $1,000 in building barn and $3,500 remodeling home. Her income tax returns listed Frank and Concetta as dependents. Returns showed income, *wages* from Western Fruit, *rent* from house in Spokane; did not show any income from sale of cattle.

*Ralph Engstadt* (neighbor). Worked at times on farm. In the evening he would go into his house and figure his time. Frank would tell Anna the amount. She would go into another room, return with her purse, give the money to Frank, who would pay the witness.

*Cecil Gragg* (neighbor). Was paid for work on farm by Anna. One time he asked Frank for the loan of a bull and Frank said, "You will have to see Anna. The cattle is hers." Under cross-examination he admitted that he had difficulty translating the Italian jargon into English.

*Berardino Primiana* (interested witness). See above.

Exhibit 6 was an application for pension fund found in the house after Concetta's death. It was signed by Frank, but never submitted. Under statement of income it listed earnings of Anna Murante. It did not list any income to Frank from the sale of cattle. It showed no personal property except savings account in bank.

FOR THE DEFENDANT:

*Arthur Schmidt* (partner in Spokane Livestock Company).

He sold cattle to Frank, but not after 1943. Between 1947 and 1951, he sold cattle *for* Frank, totaling $6,561. Frank always came in with the cattle and would stay until they were sold. At times he would take one or more back to fatten. Witness was at the farm several times. Frank had breeding stock. He would sell the big ones. He was limited in barn room and pasture.

*John Wergeland* (feed store operator). He sold Frank large quantities of cattle feed and dairy mash. Frank always paid for it.

*Otto Wahl, David Wahl* and *Robert W. Johnson*. All three worked at farm and were paid by Frank.

*Mary Rizzuto* (interested witness—mother of all of the legatees under Concetta's will). Anna said that Frank financed her trip from New York to Spokane; that the farm and house were given to her under agreement that she was to sustain them during their lives. Anna never mentioned that she was to receive other than the farm and the house. Anna told her that she bought only one animal, a bull, and that Frank owned the rest of the cattle.

*Lyle Von Erichsen* (attorney for estate). After notice to creditors was published, Anna came into his office and wanted twenty thousand dollars from the estate, contending that she had turned this money over to Frank. No claim

was made by her on that occasion that she owned the cattle, or the proceeds of any cattle sales.

*Bertha Buckley* (chief deputy in assessor's office). Records show that, from 1942 to 1953, cattle were listed by Frank Pistelle over his signature.

From the above testimony, we are constrained to admit that we are unable to decide who owned the cattle. However, the trial court found that Anna was the owner, and we cannot say that the evidence clearly preponderates against the court's findings. *In re Dand's Estate,* 41 Wn. (2d) 158, 247 P. (2d) 1016; *Peterson v. Schoonover,* 42 Wn. (2d) 621, 257 P. (2d) 209.

The court was impressed by the fact that the Pistelles never had any money during these years, except $2,500 in postal savings which were set aside to the widow; that Anna earned over $19,000 and has only $4,500 left; (the record shows that she sent her daughter $200, $1,100, and $600, and bought a car for her granddaughter for $900) that Anna worked on the farm and paid the operating expenses; that she evidently took the farm and everything with it. It is significant that the cattle remaining on the farm all belong to Anna, and that the estate is making no claim for them.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

---

August 4, 1955. Petition for rehearing denied.