[No. 33688.  Department One.  April 11, 1957.]

BONNIE LEE SILHAVY, *Appellant*, v. BETTY LOU DOANE *et al.,*
*Respondents.*[1]

*C. C. Rowan,* for appellant.

*McKevitt, Snyder & Thomas,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment
dismissing an action to establish an oral contract to devise.

September 2, 1951, George E. Gormley died intestate in
Wilbur, Washington.  His heirs were his widow, Fannie V.
Gormley, and two daughters:  Bonnie Lee Silhavy and

[1]Reported in 309 P. (2d) 1047.

Betty Lou Doane. The principal part of his estate consisted of the Pastime Tavern and Cafe.

September 5, 1951, Mrs. Gormley, Bonnie and her husband and Betty met with an attorney, who advised them that the widow inherited one half of the property and each of the daughters inherited one fourth. They requested him to prepare papers whereby the girls would transfer their interests to the mother and she would will all of her property to the daughters, share and share alike, and both girls would act as joint executrices. No mention was made to the attorney of any agreement whereby Mrs. Gormley was to leave all of her property to her daughters in consideration of their conveying to her their respective inheritances.

The attorney prepared quitclaim deeds and assignments from each daughter to the mother, which the daughters executed. He also prepared a will, which the mother executed, leaving all of her property to the daughters, share and share alike, and naming them as joint executrices. At about this time, Bonnie and her husband moved to Spokane.

In October of 1952, Mrs. Gormley married one Frank Roberts. June 13, 1953, she executed a new will, which was the same as the first, except that she gave to her husband the right to live in the home which she had recently acquired, in the event of her death.

Up to this time, everything was harmonious between the mother and the two daughters. Shortly thereafter, the mother decided to give the tavern to Betty and her husband. September 2, 1953, she executed an assignment of the lease of the tavern to them. Also, on September 2, 1953, she executed a deed quitclaiming her two houses to Bonnie. She went to Spokane and offered the deed to Bonnie, who refused to accept it.

September 18, 1953, the mother entered into an agreement with Betty and her husband, wherein she transferred all of her interest in the tavern to them, in consideration of their promise to provide for her as long as she should live. On the same day, she executed a new will, leaving five dollars to Bonnie and, with the exception of a few small

bequests, leaving the balance to Betty. Upon her death this action was commenced.

At the trial, Bonnie, Betty, and Betty's husband, all parties to the action, were precluded by RCW 5.60.030 from testifying concerning any transactions with the deceased mother. Robert Silhavy, Bonnie's husband, testified that after Mr. Gormley's funeral, he, Mrs. Gormley, Betty, and Bonnie had a discussion. This was a day or so before the attorney was called in. He testified that the girls stated that they wanted the mother to have the use of the property and that the mother was told that she could give it back to them by means of a will, and that the mother stated that that was the way she wanted to do it.

He also testified that in the summer of 1953, while Mrs. Gormley was staying at their house in Spokane, he heard her ask Bonnie if it would be all right to change her will to permit her new husband to live in the home if anything should happen to her; that she said, "I want everything to be all right with you girls."

Mrs. Charles Silhavy, Bonnie's mother-in-law, testified that Mrs. Gormley told her that she had an agreement with Betty and Bonnie concerning the property. Dr. James E. Cunningham, of Spokane, who had treated Mrs. Gormley from 1945 to 1953, and for whom Bonnie had previously worked as a nurse, testified that Mrs. Gormley told him that she had made an agreement with the girls that they were to give her their interest in the property, and that upon her death it was to be divided equally between the girls. Frank Roberts testified that prior to their marriage, Mrs. Gormley told him that the girls had signed over their interest in their father's estate, and that she wanted them to have it when she passed away.

Several neighbors and relatives testified for the defendants that Mrs. Gormley never mentioned an agreement with the girls.

The trial court was of the opinion that the plaintiff failed to sustain the burden of proving an agreement by the mother to will the property to the girls in consideration of their deeding their interests to her.

■ The findings of the trial court will not be overturned unless the evidence clearly preponderates against them. *In re Dand's Estate,* 41 Wn. (2d) 158, 247 P. (2d) 1016; *Murante v. Rizzuto,* 46 Wn. (2d) 800, 285 P. (2d) 560; *Morin v. Johnson,* 49 Wn. (2d) 275, 300 P. (2d) 569.

■ Evidence to support an oral contract to devise must be conclusive, definite and beyond all legitimate controversy. *Ferris v. Blumhardt,* 48 Wn. (2d) 395, 293 P. (2d) 935. *Estes v. Estes,* 48 Wn. (2d) 729, 296 P. (2d) 705. However, proof that a will had actually been executed is a most important factor in cases of this character. *Ellis v. Wadleigh,* 27 Wn. (2d) 941, 182 P. (2d) 49. In *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501, we said:

"The will itself is strong confirmatory proof that such an agreement was entered into. A case of this kind would not require the same degree of convincing evidence as those cases where no will had been made in conformity with an alleged oral contract."

In support of the oral contract, we have the following evidence: The fact that the will was actually executed, coupled with, at the same time, the execution of the quit-claim deeds by the daughters; the mother went to obtain Bonnie's permission before she changed her will to permit her new husband to live in the home after her death; the mother executed a deed to Bonnie for the two homes which she owned on the same day that she assigned the lease and the business of the tavern to Betty and her husband; the testimony of Mrs. Charles Silhavy and of Dr. Cunningham that Mrs. Gormley had told them of the agreement with Betty and Bonnie; the testimony of Robert Silhavy concerning the meeting of the parties following Mr. Gormley's funeral.

On the other side of the ledger is the fact that Robert Silhavy and his mother and, to a certain extent, Dr. Cunningham, were interested witnesses; that no mention of an agreement was incorporated in any of the written instruments; and that these people, all laymen and not conversant with law, did not inform the attorney that an agreement

had been made and did not ask his advise as to putting it into effect.

All of these things influenced the trial judge. He was of the opinion that everything which the parties did was as consistent with a sincere desire by the girls to assist their mother and with her desire to leave everything to them because they were her daughters, as it was consistent with an agreement that, in consideration of the daughters' deeding their interests to her, she would execute a will leaving all of her property to them, share and share alike. Although another trial judge could, under these facts, have found an agreement between the parties, we cannot say that the evidence clearly preponderates against the findings of the trial judge, who had the witnesses before him.

Appellant does not seriously contend that the trial court erred in failing to find an express trust, but argues that a resulting trust should have been impressed upon the one-fourth interest in the Gormley estate as conveyed by appellant to Mrs. Gormley.

The trust, if any, was an express trust affecting real property, which may not be shown by parol. See *Arnold v. Hall,* 72 Wash. 50, 129 Pac. 914; *Nichols v. Capen,* 79 Wash. 120, 139 Pac. 868; *In re Parkes' Estate,* 101 Wash. 659, 172 Pac. 908.

Appellant contends that the facts show an implied contract between the two daughters that neither would profit at the expense of the other. We see no merit in this contention. If appellant has any right to recover her former interest in the George Gormley estate, it can only be, in this case, by virtue of either a contract to devise or an enforceable express trust, neither of which is shown here.

Finally, appellants assign error to the trial court's allowance to the defendants of the cost of additional copies of the testimony of certain witnesses. It does not appear that a motion was made to the trial court to retax the costs. In such a case the error, if any, may not be urged on appeal. *Burrichter v. Cline,* 3 Wash. 135, 28 Pac. 367; *Main v. Johnson,* 7 Wash. 321, 35 Pac. 67; *Jenkins v. Powe,* 19 Wash. 113, 52 Pac. 520; *Simpson Logging Co. v. Chehalis County,* 80

Wash. 245, 141 Pac. 344. See, also, *Hatzenbuhler v. Harrison,* 49 Wn. (2d) 691, 306 P. (2d) 745.

The judgment is affirmed.

DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

May 29, 1957. Petition for rehearing denied.