[No. 1679-2.   Division Two.   November 30, 1976.]
PAUL VERMETTE, ET AL, *Respondents*, v. NORMAN L. ANDERSEN, ET AL, *Appellants*.

---

*Robert A. Comfort* and *Comfort, Dolack, Hansler, Hulscher, Rosenow, Burrows & Billett,* for appellants.

*David Lyall Jamieson* and *Daniel Jacobson,* for respondents.

REED, J.—This is an appeal from a Pierce County judgment in which the trial court found that the parties to a land sale contract were mutually mistaken about the suitability of the property for the construction of a residence. The trial judge, sitting without a jury, granted rescission of the contract and ordered restitution of the purchase price. On appeal, the vendors, Norman and Eva Andersen, contend that there is no substantial evidence supporting the trial judge's finding of mutual mistake of a material fact. Specifically they challenge findings of fact Nos. 5 and 9, which read as follows:

### FINDING OF FACT 5

That the uncontradicted expert testimony of RONALD HART, which the Court finds is correct, established that the property has more than a normal slope, that it constitutes a stability risk because of the soil formation, that, while drainage might help, it is of doubtful success, and that the site constitutes an unreasonable risk so far as construction of a home thereon is concerned.

### FINDING OF FACT 9

That soil tests on the property were not run. That the

evidence that drainage might solve the problem is not sufficient to show that it would be reasonable to require Plaintiffs to attempt it; so that it was not necessary for the Plaintiffs, for purposes of mitigation of damages, to increase the expenses incurred or to hazard building a home and then discover it was not a suitable site.

The vendees, Paul and Irmengard Vermette, cross-appeal, alleging that the trial court erred when it failed to grant prejudgment interest. We affirm the rescission of the contract, and reverse and remand for the entry of prejudgment interest.

In early February of 1972, Andersens[1] decided to sell a portion of their waterfront property located in the South Rosedale area on Raft Island. Plaintiffs answered their newspaper advertisement and made arrangements to view the property. After the Vermettes had made a visual inspection of the lot, the parties verbally agreed to the terms of the sale, and on February 7, 1972, they entered into an earnest money agreement. The agreement, which was conditioned upon the issuance of a septic tank permit, was finalized when the parties signed a real estate contract on March 30, 1972. After satisfying their obligation in full, the Vermettes received a statutory warranty deed on October 5, 1972.

The Vermettes next proceeded with their plans to build a new home; they retained an architect and a building contractor, obtained a building permit, and upon completion of the blueprints began construction. The project came to a halt, however, when a routine examination of the foundation footings by a Pierce County building inspector disclosed a possibility of some soil slippage. His inspection, coupled with his knowledge of a recent landslide on a nearby lot, led the inspector to issue an order stopping all further construction until a soil expert certified the land as being sufficiently stable for the construction of a house. The Vermettes instead elected to discharge the contractor and

---

[1]By stipulation neither the appeal nor cross-appeal affects defendant Morris, his spouse, or Purdy Realty, Inc., against whom all actions were dismissed by the trial judge.

to rescind the sale, and on October 24, 1973, they filed a complaint seeking to have the transaction set aside.

At trial the Vermettes offered the expert testimony of Ronald Hart, an engineering geologist whose opinion was based on his visual observation of the property, on his general knowledge of local geological conditions, and on the engineering report of one of his employees. Hart did not make any penetration tests, nor did he perform any other types of subsurface analysis.

In *Davey v. Brownson*, 3 Wn. App. 820, 478 P.2d 258, 50 A.L.R.3d 1182 (1970), it was reiterated that a court of equity may provide relief from a mutual mistake by decreeing rescission of a contract. Such a remedy is available only if both parties to the agreement are clearly mistaken about a material fact, and if the party seeking rescission is not guilty of culpable negligence in failing to discover the mistake. *Davey v. Brownson, supra* at 824. The test in cases of mutual mistake is whether the contract would have been entered into had there been no mistake. *Davey v. Brownson, supra* at 824. *See also Stahl v. Schwartz*, 67 Wash. 25, 120 P. 856 (1912); *Ross v. Harding*, 64 Wn.2d 231, 391 P.2d 526 (1964); 13 S. Williston, *A Treatise on Law of Contracts* §§ 1542, 1557 (3d ed. 1970). At trial the burden of proof is on the party seeking relief, who must prove each element by clear, cogent, and convincing evidence;[2] *Johnson v. Conner*, 48 Wash. 431, 93 P. 914 (1908) (clear and convincing evidence); 13 S. Williston, *A Treatise on Law of Contracts, supra* at § 1597 (evidence that is plain and convincing beyond reasonable controversy); *cf. Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975) (reformation of instruments).

In the instant case the Vermettes contend that while both parties entered into the contract believing the subject property was suitable for the construction of a

[2] Clear, cogent, and convincing evidence denotes a quantum of proof greater than a mere preponderance of the evidence; it does not require proof beyond a reasonable doubt. *Bland v. Mentor*, 63 Wn.2d 150, 385 P.2d 727 (1963). *See generally* Wiehl, *Our Burden of Burdens*, 41 Wash. L. Rev. 109 (1966).

home, the land in fact presented a stability hazard making construction of a residence an unreasonable risk. On appeal our inquiry is limited to ascertaining whether there is substantial evidence to support the trial judge's finding that the parties were mistaken in believing that the land was capable of supporting a residential dwelling. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Evidence that is sufficiently substantial to support an ultimate fact required to be established by a preponderance of the evidence may not be sufficiently substantial to support an ultimate fact that must be proved by clear, cogent, and convincing evidence. *In re Estate of Reilly*, 78 Wn.2d 623, 479 P.2d 1, 48 A.L.R.3d 902 (1970) (will contest based on undue influence); *see also In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973) (deprivation); *In re May*, 14 Wn. App. 765, 545 P.2d 25 (1976) (deprivation); *In re Price*, 13 Wn. App. 437, 535 P.2d 475 (1975) (deprivation); *Burkey v. Baker*, 6 Wn. App. 243, 492 P.2d 563 (1971) (divestiture of legal title by estoppel). Nevertheless, an appellate tribunal is not permitted to weigh the evidence or the credibility of the witnesses. *In re Sego, supra* at 740. We take this as meaning that our function is to determine whether any interpretation of the facts will satisfy the standard of proof. Even though we might disagree with the trial judge's evaluation of the evidence, we are compelled to affirm his findings unless there is no reasonable construction of the facts under which the evidence could be classified as clear, cogent, and convincing. Thus, substantial evidence, which by itself is sufficient to satisfy the clear, cogent, and convincing standard, is not made any less substantial by the presence of contradictory testimony, which the trial court may have disregarded as not being credible.

Here the testimony of Ronald Hart established that the property in question is situated on the Kitsap Formation, a subsurface geological system composed of "over-seepant" silt and clay strata. These strata provide ample vertical support but are prone to horizontal movement. Specifically, Hart testified that the propensity of the strata to slide is

attributable to large volumes of precipitation saturating the silts and clays and thereby increasing the pore pressure in the subsurface. This increased pore pressure combines with the relatively steep topography and a low coefficient of friction between strata to produce the slope instability found in this area. With reference to his visual observation of the subject property, Hart noted that the ground was saturated with water, that the surface had indicators of soil creep, that there was already a small slide in a foundation excavation, and that the neighboring lots on both sides had evidence of slope instability and signs of fairly extensive landslides. When asked whether he considered this a safe place to build a home, Hart answered that the lot was subject to "more than a normal risk, of more than the normal slope stability," and that if a slide occurred similar to that on the neighboring lot, the consequences would be total destruction of any structure on the property. Hart also responded to questions about the feasibility of installing a drainage system by stating that such precautions would not necessarily alleviate the problem.

We find that this testimony constitutes substantial evidence to support the trial court's finding that the lot was not suitable for the construction of a residence. Likewise, there is substantial evidence that the Vermettes were not culpably negligent for failing to discover the slope instability present on the land. *Davey v. Brownson, supra* at 825 addressed this issue of culpable negligence by holding that a purchaser is bound by the facts a reasonable investigation would disclose. Here the slides on the neighboring lots did not occur until after the sale had been consummated, and thus the Vermettes cannot be said to have had inquiry notice requiring them to make an investigation of the slope stability prior to the sale. *See, e.g., Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 457 P.2d 600 (1969). There was also testimony from Hart that ordinary home builders do not normally consult engineers for the purposes of testing the stability of their property. Lastly, there is substantial evidence that both parties be-

lieved and relied on the belief that the land was in fact sufficiently stable to support a home. Accordingly, we affirm the decision of the trial court to rescind the sale.

Plaintiffs' cross-appeal alleges that the trial court erred when it granted interest on the purchase price of $15,500 only from the date judgment was entered. Plaintiffs contend that interest should also have been awarded prior to judgment, starting on October 11, 1973, the date the notice of rescission was sent to the defendants. There is no indication in the record that the trial judge considered the issue of prejudgment interest when he balanced the equities of the parties, and therefore we do not find his decision denying damages to both parties as controlling the question of interest.

If the amount claimed is liquidated or if the amount of an unliquidated claim is ascertainable by computation without resort to speculation, prejudgment interest is allowed as damages for withholding the amount due. *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954). *See also Beedle v. General Inv. Co.*, 2 Wn. App. 594, 469 P.2d 233 (1970); C. McCormick, *Damages* § 54 (1935). Although the term "liquidated" does not lend itself to a precise definition, the Washington Supreme Court has suggested that the following are examples of liquidated claims: " 'claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.' " *Mall Tool Co. v. Far West Equip. Co.*, *supra* at 170 (quoting C. McCormick, *Damages* § 54, *supra* at 213). Furthermore, the existence of a dispute over the claim does not alter its character; it is the nature of the claim and not the defenses to it that determine whether it is liquidated. *Mall Tool Co. v. Far West Equip. Co.*, *supra* at 171. It is readily apparent that this case falls into the category of "claims for money paid out." The amount being ascertainable without reliance upon conjecture, we find that interest should have

been awarded on the purchase price from October 11, 1973, the date the sale was rescinded.

Judgment is affirmed as modified.

PETRIE, C.J., and COCHRAN, J. Pro Tem., concur.