[No. 2799–2. Division Two. January 10, 1979.]

JAMES M. THOMPSON, *Appellant,* v. JOHN D. HENDERSON, *as Executor,* ET AL, *Respondents.*

*Jack L. Burtch,* for appellant.

*James B. Finlay,* for respondents.

REED, J.—Plaintiff James M. Thompson appeals from the dismissal of his suit for specific performance of an alleged oral contract to make a will. We find no error and affirm.

Plaintiff claims he made an oral agreement with his father that entitles him to his father's entire estate, despite the terms of his father's final will, by which he was given only 42 percent of the estate. Defendants, the executor and remaining beneficiaries of the father's will, argued the plaintiff son had failed to prove to a high probability that the alleged contract existed; the trial court agreed with their contentions and dismissed the suit. After examining the record we are compelled to sustain the court's decision.

The record shows that in mid–1971, plaintiff's father moved his house trailer onto plaintiff's property in Hoquiam. Because the father was old and almost blind, the plaintiff and his wife saw to his daily needs. Plaintiff also did maintenance work and made some improvements on his father's 20–acre farm near Menlo.

The father paid plaintiff and his wife at least $150 rent every month. He opened and funded a joint checking account with them so that they could pay his bills for him. The father also made other cash contributions to the family: the record shows he paid the plaintiff's $1,400 LID assessment in January 1973, and he later gave about $500 to one of plaintiff's children.

The attorney who drafted the will[1] testified he prepared a quitclaim deed in 1973, which, if signed by the father,

---

[1]This attorney initially filed the suit, prepared all pleadings, and attended at trial. In apparent, and somewhat belated recognition of (CPR) DR 5–101(B) and

would have given the farm to the plaintiff. The deed was never executed, however, because of the attorney's advice it would create "tax problems." Instead, the father executed a will which the attorney said was intended to effectuate a previous oral agreement between the father and the plaintiff. According to the alleged agreement, the entire estate was to go to plaintiff in return for his promise to take care of his father and manage his father's affairs during his lifetime. The alleged oral agreement, however, is mentioned in neither the unexecuted quitclaim deed nor the 1973 will.

In June 1974, the father moved back to his farm, and the plaintiff continued to visit him and work on the property. In September 1975, however, the two men had a falling out. The plaintiff never returned to visit the father or work on the farm.

In December 1975—two months before his death—the father executed a new will which revoked all earlier wills, removed plaintiff as executor and left him only 42 percent of the estate. The 1975 will, like the 1973 will, mentions no oral contract.

After the father's death the plaintiff initiated this action to enforce the alleged oral contract against the estate. The Superior Court dismissed the suit after trial, on grounds the plaintiff failed to meet the high standard of proof required to establish the existence of the alleged oral contract. For the following reasons we affirm the dismissal.

 Oral agreements to devise are recognized in Washington, but they are regarded with suspicion and will be enforced only on the strongest evidence that they are founded upon valuable consideration and deliberately entered into by the decedent. *Resor v. Schaefer,* 193 Wash. 91, 74 P.2d 917 (1937); *Arnold v. Beckman,* 74 Wn.2d 836, 840, 447 P.2d 184 (1968). The standard of proof in such cases is not a "preponderance of the evidence" but rather, one of "high probability." *Cook v. Cook,* 80 Wn.2d 642, 647,

DR 5–102, he joined another lawyer and the latter examined witnesses and presented oral argument.

497 P.2d 584 (1972); *In re Estate of Richardson,* 11 Wn. App. 758, 762, 525 P.2d 816 (1974). The claimant must show it is highly probable that (1) decedent agreed to will or leave claimant certain property (including specific evidence objectively manifesting the decedent's recognition of an existing agreement during his lifetime); (2) the services or other performances contemplated as consideration for the agreement were actually performed; and (3) the services or acts were performed in reliance upon the contract. *Cook v. Cook, supra* at 644–45, 647; *Jennings v. D'Hooghe,* 25 Wn.2d 702, 704–05, 172 P.2d 189 (1946). These three elements must be proved in the order stated above. *Humphries v. Riveland,* 67 Wn.2d 376, 380, 407 P.2d 967 (1965); *Blodgett v. Lowe,* 24 Wn.2d 931, 939, 167 P.2d 997 (1946). Additionally, it must be borne in mind that evidence which may be sufficient to support a finding based on a "preponderance of the evidence" test, may not be sufficient under the "highly probable" requirement. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973); *see also Vermette v. Andersen,* 16 Wn. App. 466, 558 P.2d 258 (1976).[2]

■ Where, as here, the trial court determines that a plaintiff has failed to meet the high burden of proof, it becomes doubly hard for an appellate court to rule in the plaintiff's favor. We may not reweigh the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard. *In re Sego, supra* at 739–40; *Vermette v. Andersen, supra* at 470. We are compelled to affirm the dismissal unless there is no reasonable way for the evidence to substantiate the trial court's findings. *See Mood v. Banchero,* 67 Wn.2d 835, 838, 410 P.2d 776 (1966).

In this case the trial court, as fact finder, simply was not convinced to a high degree of probability that plaintiff had proved the existence of the alleged oral agreement. Indeed,

[2]In *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973), the Supreme Court equated the "highly probable" test to the standard of proof requiring "clear, cogent and convincing" evidence. *See also Vermette v. Andersen,* 16 Wn. App. 466, 470, 558 P.2d 258 (1976); *Rolph v. McGowan,* 20 Wn. App. 251, 257, 579 P.2d 1011 (1978).

several facts elicited at trial reasonably support the conclusion there was no such agreement.

First, the plaintiff argues that the father's execution of the 1973 will is strong evidence of an oral agreement to devise. *Worden v. Worden*, 96 Wash. 592, 605, 165 P. 501 (1917). The father's later execution of a new will in 1975, however, is equally strong evidence of the absence of such an agreement. *Widman v. Maurer*, 19 Wn.2d 28, 40–41, 141 P.2d 135 (1943).

Next, the plaintiff claims he was keeping his part of a bargain by looking after his father. His efforts, however, easily can be interpreted otherwise. During the period when his father parked his trailer on the plaintiff's property, he paid a substantial monthly rent. He also opened a joint checking account for the plaintiff and his wife to use in covering his daily expenses. Services for which the plaintiff was compensated do not tend to prove there was an oral contract. *Boettcher v. Busse*, 45 Wn.2d 579, 583, 277 P.2d 368, 49 A.L.R.2d 191 (1954); *King v. Clodfelter*, 10 Wn. App. 514, 517, 518 P.2d 206 (1974).

Although the father apparently did not pay the plaintiff specifically for his time and labor on the farm, the mere fact work was done on the farm is no proof it was done pursuant to an agreement, unless the agreement first is shown to exist. *Humphries v. Riveland*, *supra* at 381; *Blodgett v. Lowe*, *supra* at 938–39. Several major jobs on the farm were done by professional contractors, and the plaintiff makes no claim that he himself paid for their services; in fact, the plaintiff concedes that his father reimbursed him for all materials he bought for various projects on the farm. Moreover, the plaintiff was not the only family member who worked on the property. His brother testified he also had done considerable work on the farm several years earlier—without the inducement of a secret promise of inheritance. It must be remembered, too, that the 1973 will made the plaintiff sole heir of the entire estate. The plaintiff's ambitions to upgrade the farm can be explained

by the fact he expected to inherit the farm by will, regardless of a contract with the father.[3]

Another important fact is that neither the unexecuted quitclaim deed, the 1973 will, nor the 1975 will mentions the alleged oral contract. The attorney who drafted the deed and the 1973 will failed to explain why he did not draft the alleged agreement into those documents. The wills' failure to mention a previous contract implies there was no contract. *Estes v. Estes,* 48 Wn.2d 729, 731, 296 P.2d 705 (1956).

Finally, it is significant that of the 11 witnesses who testified on behalf of plaintiff, only one witness—the attorney who drafted the 1973 will—claimed to have overheard the father acknowledge a legal obligation to the plaintiff.[4] The attorney's testimony, if it had been accorded full weight by

---

[3]Plaintiff's theory is that the extent of the work he did on the farm is indicative of the fact he was relying upon an agreement. On the contrary, the amount of work done by plaintiff and his wife is immaterial to the question of whether there was an oral contract. As was stated in *Bicknell v. Guenther,* 65 Wn.2d 749, 760, 399 P.2d 598 (1965):

[I]t is immaterial whether the compensation received by plaintiff for his services [was] above, below, or equal to the going wage for farm hands in the community at that time. The argument that nobody would have worked so hard for that compensation without a contract with [decedent] to leave him the farm and other property is a pure nonsequitur as proof of the existence of such a contract.

[4]Several of plaintiff's witnesses testified as to what the father said:

Mervin Anderson: [Decedent] mentioned the fact many times how involved [plaintiff] was in working on the place and improving it. He mentioned the fact that he knows it will be his any way.

Bill McCowan: [Decedent] stated that [plaintiff] was going to have the farm some day because [plaintiff] was doing all the work.

Lawrence Wilhelm: [Decedent] just outright stated that he was going to leave it to [plaintiff].

Wilma Wilhelm: [Decedent] said that [plaintiff] was always taking care of him and he'd leave it to [plaintiff].

Henry King: [Decedent said] I'm leaving this to [plaintiff] for taking care of me.

Betty Birchall: [Decedent said] [the farm] belongs to my son . . . He has been doing all this work to improve the property and it belongs to him.

John Karnas: [Decedent] said that [the farm] should go to [plaintiff] because he was the only one that did any work on it.

the trial court, would have been sufficient by itself to establish the existence of an oral contract. That attorney, however, was in the uniquely uncomfortable position of being both witness and paid counsel for the plaintiff. His credibility as a witness was for the trial court to decide. *In re Sego, supra* at 739–40; *Vermette v. Andersen, supra* at 470. We can only surmise his conflicting roles weighed heavily in the trial court's decision not to give full credence to his testimony. In any event, we cannot say the trial court abused its discretion in this regard.

Overall, when the attorney's testimony is discounted, we must agree with the trial court that the evidence fails to show to a high degree of probability the existence of an oral agreement between father and plaintiff, or that the father recognized any legal obligation to leave his entire estate to plaintiff. It follows that the evidence necessarily fails to establish the other two elements of proof, namely, that the services performed by the plaintiff and his wife were so performed as consideration for the alleged contract and that they were performed in reliance upon it. *Blodgett v. Lowe, supra* at 939; *Humphries v. Riveland, supra* at 380.

█ The plaintiff assigns error to the trial court's refusal to allow his wife to testify why she and the plaintiff took care of the father while he lived on their property in Hoquiam. We hold that the court correctly applied the deadman's statute, RCW 5.60.030.[5] The purpose of the statute is to prevent interested parties from giving self-

---

From these statements, one may speculate whether the decedent recognized some moral obligation to the plaintiff. The statements, however, fail to show he recognized any legal contractual obligation to the plaintiff. Expressions of testamentary intent like these do not prove the making of a contract, nor do they indicate the terms of a contract. *Jennings v. D'Hooghe,* 25 Wn.2d 702, 724, 172 P.2d 189 (1946); *Silhavy v. Doane,* 50 Wn.2d 110, 114, 309 P.2d 1047 (1957).

[5]RCW 5.60.030 provides in part: "[I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . ."

serving testimony regarding conversations or transactions with a decedent. *McGugart v. Brumback,* 77 Wn.2d 441, 444–45, 463 P.2d 140 (1969). The wife of the plaintiff is an interested party because the property sought would be community property. *Diel v. Beekman,* 7 Wn. App. 139, 152–53, 499 P.2d 37 (1972); *McGugart v. Brumback, supra.*

■ The plaintiff correctly asserts that a decedent's personal representative can waive protection of the deadman's statute by failing to object to the prohibited testimony or by carelessly cross–examining the interested party beyond the scope of direct examination. *See Ellis v. Wadleigh,* 27 Wn.2d 941, 952, 182 P.2d 49 (1947) (failure to object); *Robertson v. O'Neill,* 67 Wash. 121, 124, 120 P. 884 (1912) (cross–examination beyond scope of direct); *McGugart v. Brumback, supra* at 450–51. A personal representative does not waive protection of the deadman's statute, however, by cross–examining an interested party as to work for which the party was *paid* by the decedent. *King v. Clodfelter, supra* at 517; *Woeppel v. Simanton,* 53 Wn.2d 21, 26, 330 P.2d 321 (1958); *Boettcher v. Busse, supra* at 583. Here, the decedent paid the plaintiff and his wife for their services and he reimbursed them for their expenditures. The cross–examination of the wife was properly within the scope of the direct examination and it was relevant to negate the plaintiff's assertion that the services and expenditures were consideration for the alleged oral contract. Thus there was no error.

After a careful review of the record, we conclude the plaintiff's case failed at trial because of fatal defects of proof regarding the existence of the alleged oral agreement to devise. The trial court had ample reason to rule that the plaintiff failed to establish any of the three elements of proof to a high degree of probability. Having found no error, we must uphold the trial court's decision.

Judgment affirmed.

PEARSON, C.J., and SOULE, J., concur.