[No. 16559-3-I. Division One. February 23, 1987.]

*In the Matter of the Estate of*
MARY O'BRIEN.

SUSAN FORTNER, *as Personal Representative, Respondent,* v. RAYMOND S. ROBINSON, SR., ET AL, *Appellants.*

*Raymond S. Robinson, Sr.,* and *Peaches M. Robinson,* pro se, and *Edward C. Beeksma, Alan R. Hancock,* and *Zylstra, Beeksma, Waller & Skinner,* for appellants.

*Steven J. Peiffle, Mickie E. Jarvill,* and *Bailey, Duskin & Jarvill,* for respondent.

CHAN, J.*—Peaches M. Robinson appeals from a judgment divesting her of title to two parcels of real property and vesting title in the estate of her mother, Mary O'Brien.[1] Mrs. Robinson contends the presumption of delivery of the deeds was not overcome and, even if it was, RCW 11.02.090 applies to validate the conveyances.

On December 12, 1979, Mrs. O'Brien signed and acknowledged quitclaim deeds to her real property located in Seattle (a house and vacant lot) and on Camano Island (a house) to Mrs. Robinson. Mrs. Robinson first saw the deeds shortly after their execution and acknowledgment. Mrs. O'Brien had herself received title to the King County property by quitclaim deed from her mother.

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Judges Pro Tempore in Division One.

[1] Peaches Robinson's husband, Raymond S. Robinson, Sr., is a nominal appellant. The deeds at issue were made out to Peaches, presumably as her separate property. This opinion will refer to Peaches Robinson as the sole appellant.

The deeds at issue were located in a joint safe deposit box of Mrs. Robinson and her mother until December 1982, when they closed their box. Mrs. Robinson testified she took possession of the deeds when the box was closed, maintained possession continuously thereafter and believed herself to be the owner of the properties. But three other witnesses testified Mrs. Robinson stated at a family conference after Mrs. O'Brien's death that Mrs. Robinson had found "the deeds" with Mrs. O'Brien's other personal papers in her bedroom after her death. However, Mrs. Robinson did not specify at the conference which deeds she found at the house.

From 1977 to 1983, Mrs. O'Brien paid property taxes and claimed the senior citizen's tax exemption on the Seattle property; in so doing, she swore she was the fee owner of that property. She also paid for insurance, maintenance and repairs on both properties at her own expense.

In September 1982, Mrs. O'Brien moved from her Seattle home to her home on Camano Island. Mrs. Robinson's daughter and her roommates moved to the Seattle house and paid Mrs. O'Brien approximately the fair market rental of that property. Mrs. O'Brien continued to pay the utility bills for the Seattle house.

On April 23, 1983, Mrs. O'Brien suffered a severe stroke. Mrs. Robinson recorded the quitclaim deeds on April 29, 1983, after two physicians told her that Mrs. O'Brien was not likely to recover and would need expensive convalescent care.

Mrs. O'Brien died intestate without becoming responsive, on July 4, 1983. Her heirs at law are Mrs. Robinson, and three granddaughters who are the children of Mrs. O'Brien's deceased daughter, Patricia Owen.

One of Mrs. O'Brien's granddaughters, Susan Fortner, was appointed personal representative, and in that capacity filed this action to quiet title of the Seattle and Camano Island real property in Mrs. O'Brien's estate. Mrs. Robinson counterclaimed to quiet title, claiming the property had been given to her.

At trial it was undisputed Mrs. O'Brien had had a very close and loving relationship with all her relatives. Nona Moe testified Mrs. O'Brien had told her many times she was keeping the Camano Island property for her grandchildren, and she said it as late as September 1982. Ada McBride testified Mrs. O'Brien told her as late as 6 weeks before the stroke that Mrs. Robinson "would handle things" to make sure Patricia Owen's children received their share of Mrs. O'Brien's estate. But within 2 months before her stroke, Mrs. O'Brien also discussed a possible sale of her Seattle property with Mrs. McBride.

Frances Parmenter testified Mrs. O'Brien had told her many times she had helped Patricia financially and was deeding everything to Mrs. Robinson. Mrs. Parmenter believed Mrs. O'Brien had already executed the deeds, but she intended them to take effect upon her death. Mrs. Parmenter also testified Mrs. O'Brien continued to treat the property as her own, and discussed selling the property up to 6 months before her death. Elna Nelson testified that after Patricia died, Mrs. O'Brien said she was leaving everything to Mrs. Robinson. Mrs. Nelson did not know whether Mrs. O'Brien meant by will or another way, but "she said she had already done it." Approximately 1 month before her stroke, Mrs. O'Brien also discussed selling the Seattle property and adding on to her Camano Island house with Mrs. Fortner's husband.

A letter prepared by Mrs. O'Brien in anticipation of an overseas trip was also introduced into evidence. Mrs. Robinson found the letter, dated March 16, 1980, inside Mrs. O'Brien's passport after her death. The letter was directed to Peaches and requested her to sell the real property furnished, to distribute $3,000 from the proceeds of sale to each of Patricia's and Peaches' daughters, and to pay the property taxes on the Seattle and Camano Island properties.

The trial court found Mrs. O'Brien did not intend an immediate transfer of the property during her life, but rather intended a disposition to take effect at her death.

The court further found the deeds did not comply with the necessary formalities for the execution of testamentary instruments. Mrs. Robinson timely appeals.

Mrs. Robinson first contends the court erred in finding the presumption of delivery was overcome by clear, cogent and convincing evidence. She cites a long line of case authority dealing with varying factual situations in which courts have held the presumption of delivery was not overcome. *E.g., Johnson v. Wheeler,* 41 Wn.2d 246, 248 P.2d 558 (1952) (grantor admitted in fraudulent conveyance action that deed was not intended to take effect until after his death); *In re Estate of Cunningham,* 19 Wn.2d 589, 143 P.2d 852 (1943) (grantor obtained a building permit, rented out the property, and paid taxes and insurance); *Mott v. McDonald,* 146 Wash. 638, 264 P. 1003 (1928) (grantor exercised dominion and control over property and purported to will it to another); *In re Estate of Kirkpatrick,* 140 Wash. 452, 249 P. 980 (1926) (grantor paid taxes, insurance, and real estate contract payments on the property, and sold the property); *In re Estate of Pappuleas,* 5 Wn. App. 826, 490 P.2d 1340 (1971) (grantor paid taxes and insurance on property and executed will declaring it to be his separate property).

A deed must be delivered to effectively pass title. A key element of delivery is an intent to *presently* pass title. *Juel v. Doll,* 51 Wn.2d 435, 319 P.2d 543 (1957); *Bull v. Fenich,* 34 Wn. App. 435, 661 P.2d 1012, *review denied,* 100 Wn.2d 1003 (1983). Possession by the grantee gives rise to a presumption of delivery, which may be overcome only by clear, cogent and convincing evidence. *Raborn v. Hayton,* 34 Wn.2d 105, 208 P.2d 133 (1949); *In re Estate of Pappuleas, supra.*

This court must affirm the trial court unless there is no reasonable construction of the facts under which the evidence could be termed clear, cogent and convincing. *Vermette v. Andersen,* 16 Wn. App. 466, 558 P.2d 258 (1976). Evidence may be clear, cogent and convincing despite the presence of contradictory evidence. *Bland v. Mentor,* 63

Wn.2d 150, 385 P.2d 727 (1963); *Vermette v. Andersen, supra.* The trial court is in the best position to weigh the evidence and evaluate the witnesses' credibility. *Bland v. Mentor, supra.* This court is not permitted to make evaluations of credibility or resolve conflicts in the evidence. *Vermette v. Andersen, supra.*

The personal representative correctly asserts Mrs. Robinson fails to take into account the cumulative effect of the testimony. None of Mrs. Robinson's case authority includes the combination of facts present here. We hold substantial evidence supports the trial court's determination that the presumption of delivery was overcome by clear, cogent and convincing evidence.

Mrs. Robinson also urges the presumption of delivery may only be overcome by direct, as opposed to circumstantial, evidence. We need not consider an argument unsupported by citation to authority. *Puget Sound Plywood, Inc. v. Mester,* 86 Wn.2d 135, 542 P.2d 756 (1975); *Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 639 P.2d 825 (1982); RAP 10.3(a)(5). Nevertheless, we note it is well settled that circumstantial evidence is as trustworthy as direct evidence. *State v. Delmarter,* 94 Wn.2d 634, 618 P.2d 99 (1980); *State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975); *State v. Turner,* 29 Wn. App. 282, 627 P.2d 1324 (1981).

Lastly, Mrs. Robinson contends that even if the deeds were not delivered, the transfers were valid under RCW 11.02.090. That statute provides in part:

(1) Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, joint tenancy, community property agreement, trust agreement, *conveyance,* or any other written instrument *effective as a* contract, gift, *conveyance,* or trust is deemed to be nontestamentary, and this title does not invalidate the instrument or any provision:

(a) that money or other benefits theretofore due to, controlled or owned by a decedent shall be paid after his death to a person designated by the decedent in either

the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently;

(b) that any money due or to become due under the instrument shall cease to be payable in event of the death of the promisee or the promisor before payment or demand; or

(c) that any property which is the subject of the instrument shall pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

(Italics ours.) RCW 11.02.090(1).

 RCW 11.02.090 is drawn nearly verbatim from Uniform Probate Code § 6–201. The commentators are divided regarding the reach of section 6–201, but the Washington Legislature's primary concern was to confirm the validity of "three–pronged" community property agreements. Recent Developments, *Property—Probate Law and Procedure— No More Probate? Wash. Rev. Code § 11.02.090 (1974)*, 51 Wash. L. Rev. 451 (1976). Nevertheless, the statute clearly mandates transfers such as those at issue here be *effective* as conveyances. If there was no delivery due to lack of intent to make a present gift, then there was not an effective conveyance.

We agree with the analysis of the North Dakota Supreme Court in *First Nat'l Bank v. Bloom*, 264 N.W.2d 208, 209 (N.D. 1978). There, the grantor had kept in his safe deposit box a deed in an envelope marked "To be delivered to Edgar Bloom upon my death." The grantee attempted to invoke the North Dakota version of the Uniform Probate Code § 6–201, although substantial evidence supported the finding there was no constructive or actual delivery of the deed during the grantor's lifetime. The court held at page 212:

> The key part of that section for this case is the phrase "effective as a contract, gift, conveyance, or trust". There is nothing in that section of the Uniform Probate Code or any other section of the Century Code which eliminates the necessity of delivery of a deed to effectuate a convey-

ance from one living person to another. *See* Sections 47–09–06 and 47–09–01, N.D.C.C. In this case, we have upheld the finding of the district court that there was no actual or constructive delivery of the deed, and therefore the deed is not effective. Accordingly, Section 30.1–31–14, N.D.C.C., is not applicable in this case.

In her brief, the personal representative requested attorney fees incurred on appeal, citing RCW 11.48.210. However, at oral argument her counsel indicated he wished to reserve the matter for the probate court pursuant to that statute. We concur.

The judgment is affirmed.

CALLOW and REVELLE, JJ. Pro Tem., concur.

Review granted by Supreme Court May 8, 1987.