33 P.3d 419 (2001)
108 Wash.App. 918
STATE of Washington, Respondent,
v.
Arthur A. NELSON, Appellant.
No. 19279-2-III.
Court of Appeals of Washington, Division 3, Panel Ten.
October 25, 2001.
*420 Kevin L. Holt, Kennewick, for Appellant.
Andrew K. Miller, Scott W. Johnson, Prosecuting Attorney's Office, Kennewick, for Respondent.

PUBLISHED IN PART
BROWN, J.
Arthur A. Nelson, convicted of 21 property crimes, correctly contends the trial court erred by admitting his testimony from the trial of his co-defendants in violation of ER 410 because it stemmed from a failed plea agreement. Pro se, he challenges the sufficiency of evidence and the sufficiency of the information. Because the testimony was harmless, except as to two burglaries, we affirm 19 convictions, reverse two convictions, and remand for correction of the judgment.

FACTS
Acting on a tip in August 1999, Detective Mark Weber began surveillance of Mr. Nelson regarding multiple recent storage unit burglaries in Kennewick. Generally, bolt cutters were used to cut the locks. Some locks were replaced, apparently to either conceal entry or facilitate further thefts. By coincidence, in late August, a police officer contacted Mr. Nelson as he was out walking at 4:20 a.m. carrying a Tupperware bag. Mr. Nelson disclaimed ownership of the bag and contents, saying he had just found it. The officer took the bag to find the owner. The bag contained white gloves and a bolt cutter.
Later that day, Detective Weber connected the bag to a Tupperware store burglary, which had been reported along with a burglary of the adjacent Brinkley premises just after Memorial Day. That evening, police executed a search warrant for Mr. Nelson's *421 residence and car. The car, Mr. Nelson, and his wife were found at Mr. Nelson's parents' home. The car was loaded for immediate departure to California. Mr. Nelson left quickly on foot when he saw the police arrive. Mr. Nelson's car did not contain any identifiable stolen items, but his residence contained bolt cutters and an item taken during the Tupperware store burglary. A lawful search the next day at Mr. Nelson's parents' home revealed numerous burglarized items from the Brinkley and Tupperware stores.
Jeff Ochoa, another suspect, was later arrested for an unrelated matter. Detective Weber secured Mr. Ochoa's confession to multiple burglaries and thefts, which directly implicated Mr. Nelson and Richard Bainter. Mr. Ochoa identified the places burglarized with Mr. Nelson and/or Mr. Bainter.
Mr. Nelson was arrested in California on two Washington charges apparently related to the Tupperware and Brinkley burglaries. In October 1999, while returning by car with Detective Weber, Mr. Nelson asked, "What kind of time I'm looking at." Mr. Nelson continued, "Probably looking at least three years, if not five, for what you guys have on me." Report of Proceedings at 657. Mr. Nelson admitted knowing Richard Bainter and Jeff Ochoa. Mr. Nelson offered to give names of persons involved in crimes he was not involved with in exchange for leniency in the current matters.
Mr. Nelson's parents were charged as co-defendants with possession of stolen property. In December 1999, on the morning of his parents' trial for possessing stolen property, Mr. Nelson and the State reached a plea agreement. Immediately thereafter, the State called Mr. Nelson as a witness in his parents' trial, which ultimately resulted in acquittals. The plea agreement fell apart before Mr. Nelson's mistrial in February 2000. At his March 2000 retrial, the State characterized the failed plea agreement as a mutual misunderstanding mainly regarding sentencing length and offered to accept Mr. Nelson's plea as originally understood by him, a plea to five counts of burglary with a 50-month recommendation. Mr. Nelson rejected the offer.
Mr. Nelson was tried under a fourth amended information charging 29 property crimes. Over Mr. Nelson's objection, the trial court admitted portions of his testimony provided at his parents' trial. During trial, eight counts were dismissed. Mr. Nelson was convicted of the remaining 21 crimes: 15 counts of second-degree burglary; four counts of second-degree theft; one count of first-degree burglary; and one count of third-degree theft. Mr. Nelson received a concurrent 60 month sentence within the standard range.
Mr. Nelson appealed the decision admitting his prior testimony. Pro se, he alleges evidence insufficiency and a deficient information.

ANALYSIS

A. Statement Admissibility
The issue is whether, under ER 410, the trial court abused its discretion by admitting Mr. Nelson's testimony given in a co-defendants' trial pursuant to a plea agreement, that was later abandoned by both parties.
Evidence admissibility issues are reviewed for an abuse of discretion. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). Discretion is abused when a decision to admit evidence is manifestly unreasonable or based upon untenable grounds. Id. ER 410 generally renders inadmissible pleas, plea negotiations and settlements; it partly provides:
Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
The State contends it made no specific bargain for Mr. Nelson's testimony. Whether Mr. Nelson's testimony was a term of the plea agreement is a question of fact. See Harris By and Through Ramseyer v. Blodgett, 853 F.Supp. 1239, 1282 (W.D.Wash. *422 1994). Although the record does not contain any specific finding, the trial court noted its belief that the testimony was provided as part of a plea agreement. The record supports that belief. The plea negotiations were hurriedly completed on the first morning of his parents' trial near the courtroom. Moreover, while testifying at his parents' trial, Mr. Nelson related that his testimony was being provided as part of a plea agreement.
If a plea agreement does not contemplate a defendant's required testimony, then later testimony is not per se inadmissible so long as it is voluntary. Hutto v. Ross, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). In Hutto, the defendant confessed under oath, after being advised of his Miranda[1] rights. Before his plea was entered, Mr. Hutto withdrew his plea and demanded a trial. The court held the confession was voluntary as not an express precondition of the plea agreement. Id. at 30, 97 S.Ct. 202.
Hutto is consistent with Washington case law requiring statement admissibility to be tested for voluntariness first, by a coercion test, and second, by a rights knowledge and waiver test under Miranda. See State v. Reuben, 62 Wash.App. 620, 623-25, 814 P.2d 1177 (1991). Here, the record discloses an implicit, if not direct, State promise inducing Mr. Nelson's testimony without any indication of rights knowledge and/or waiver. Notably, the coercion test incorporates due process principles of fair play by proscribing threats, violence, and direct or implied promises, however slight. State v. Cushing, 68 Wash.App. 388, 392, 842 P.2d 1035 (1993). Thus, both voluntariness tests fail here.
Further, the purpose of ER 410 is to encourage criminal dispositions by protecting plea negotiations from disclosure. State v. Jollo, 38 Wash.App. 469, 472, 685 P.2d 669 (1984). In Jollo, the court held incriminating statements made in furtherance of plea negotiations at a State requested, amenable-to-treatment evaluation in an indecent liberties case should not have been admitted under ER 410 at a subsequent bench trial, even though the agreement was not reached due to the defendant's acts. Id. at 473, 685 P.2d 669. It rejected the State's argument made here that a defendant's actions should preclude him or her from claiming lack of voluntariness. Id. The court noted such a position would "have the effect of discouraging plea negotiations by penalizing defendants who, for whatever reason, choose to reject a plea agreement and go to trial." Id.
The State concedes that the intended plea agreement was vitiated by mutual misunderstandings about the critical terms. Under Washington contract law principles, rescission is available for mutual mistake. Vermette v. Andersen, 16 Wash.App. 466, 469, 558 P.2d 258 (1976). When a contract is rescinded, the court attempts to restore the parties to their relative positions as if no contract had been made. Willener v. Sweeting, 107 Wash.2d 388, 397, 730 P.2d 45 (1986). Nor was Mr. Nelson required to accept the State's subsequent offer to plea according to Mr. Nelson's earlier expectations. The subsequent offer does not save or ameliorate the earlier failed agreement.
Given the totality of the circumstances, we conclude that when plea negotiations lead to a plea agreement rescinded by mutual agreement, the testimony provided pursuant to the failed agreement is inadmissible. Thus, whether using a voluntariness or an ER 410 analysis, it was error to admit Mr. Nelson's statements made during his parents' trial.
Mr. Nelson incorrectly asserts that res judicata principles barred the second trial judge from admitting the challenged statements after he received a favorable ruling by the mistrial judge. Res judicata precludes re-litigation of issues decided by final judgment. Loveridge v. Fred Meyer, Inc., 125 Wash.2d 759, 763, 887 P.2d 898 (1995). However, an evidentiary ruling is not a final judgment. State v. Kinard, 39 Wash.App. 871, 873, 696 P.2d 603 (1985).
The State argues any error was harmless because it involved an evidentiary rule, not a constitutional right. The improper admission of evidence is reversible error solely if it results in prejudice. State v. *423 Vreen, 99 Wash.App. 662, 671, 994 P.2d 905 (2000), aff'd, 143 Wash.2d 923, 26 P.3d 236 (2001). An evidentiary error is prejudicial if a reasonable probability exists that it materially affected the outcome of the trial. Id. No prejudice exists if the inadmissible evidence is "of minor significance in reference to the overall, overwhelming evidence as a whole." State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997). In assessing whether the error was harmless, we measure the admissible evidence of Mr. Nelson's guilt against the prejudice caused by the improperly admitted evidence. Id.
The admissible evidence includes Mr. Ochoa's substantial testimony, which directly tied Mr. Nelson to all of the crimes except the Tupperware and Brinkley burglaries. Mr. Nelson was convicted of two counts of burglary and one count of theft for the burglaries of these businesses.
Although there is insufficient admissible evidence to link Mr. Nelson to the Brinkley and Tupperware burglaries, his second-degree theft conviction from the Brinkley office is supported by circumstantial evidence. The Brinkley and Tupperware property found in Mr. Nelson's possession or traced to him supports theft inferences. Inferences were available from Mr. Nelson's contact with police at 4:20 a.m. while holding a Tupperware bag of burglary tools, and his admissible statements made while returning to Washington. Police surveillance of Mr. Nelson verified Mr. Ochoa's account of various activities including yard sales and swapping stolen property among other accomplices. Mr. Ochoa's wife, Dawn, gave substantial evidence about Mr. Nelson's extensive activities with her husband and Mr. Nelson's admissions of illicit activity such as lock cutting at storage sheds with bolt cutters and replacing the locks. Additionally, she described specific stolen property she observed and some that was ultimately returned to the police.
Comparatively, in the erroneously admitted trial testimony, Mr. Nelson mainly appeared to provide exculpatory testimony in behalf of his parents while minimally admitting his association with Mr. Ochoa at that time. His testimony was generally self-serving, self-protective, and evasive.
For example, Mr. Nelson did not admit involvement in any crime. Mr. Nelson denied knowing the property received by his parents was stolen, until later. He testified vaguely about his agreement to plead guilty to two unspecified counts of commercial burglary in exchange for dismissal of several other unspecified counts. He specifically denied breaking into the Brinkley and Tupperware stores. He admitted lying about finding the bag with the gloves and bolt cutters. He carefully indicated he knew gloves and bolt cutters are used for burglaries, but did not indicate he or anyone else had used them for that purpose. He admitted running when the police arrived at his parents' home, but stressed his willingness to come back voluntarily by waiving extradition.
In balance, except for the Brinkley and Tupperware burglaries, we cannot say his statements at his parents' trial were prejudicial. Because the jury may have derived otherwise unsupported inferences from Mr. Nelson's testimony when deciding the Brinkley and Tupperware burglary issues, we cannot say the testimony as to those burglary counts was harmless.
In sum, the trial court's reasons for admitting Mr. Nelson's testimony at his parents' trial were untenable. The testimony should have been ruled involuntary and inadmissible under ER 410 as part of a plea agreement that was later rescinded for mutual mistake. However, except for the Brinkley and Tupperware burglaries, counts one and two, the error was harmless in light of other admissible evidence supporting conviction.
Affirmed.
A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: KURTZ, C.J., and KATO, J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).