IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| IN THE MATTER OF THE DEPENDENCY OF<br><br>A.A.L.<br>_____ | No. 35009-6-III (Consolidated with No. 35010-0-III) |
| IN THE MATTER OF THE DEPENDENCY OF<br><br>A.E.L., JR. | UNPUBLISHED OPINION |

FEARING, C.J. — A father of two young children challenges the trial court's order declaring his children dependents of the State of Washington. The father also challenges the order placing his children in the care and custody of the State. Because substantial evidence supports both orders, we affirm the trial court.

## FACTS

This appeal concerns the welfare of a young boy and girl, Amy Lidner and Aaron Lidner, Jr. Lucia Thomas and Aaron Lidner, Sr., an unwed couple, begat the two children respectively on Christmas Eve 2012 and March 30, 2014. All names are

fictitious, although the son bears the same name as his father. We will refer to the son as Aaron and the father as Lidner.

The State of Washington's Department of Social and Health Services (DSHS) first observed the living conditions of Amy and Aaron, in their residence with their parents, in 2014. Department staffers found Amy and Aaron in a filthy home with unsafe living conditions.

In 2014, DSHS assigned Bonnie Gaines as the social worker for Lucia Thomas and Aaron Lidner, Sr. Gaines taught the parents about home organization, child discipline, cleanliness, and child medical care. In 2014, the parents reluctantly engaged in parental education since the duo believed DSHS wrongfully accused them of neglecting their children. The two took only those minimal steps needed to ensure the cessation of government services. When Gaines ended her assistance in 2014, she concluded that Thomas and Lidner had progressed little in parenting skills.

On September 29, 2016, Adams County Sheriff Sergeant Tomas Solano visited, as part of an investigation, an area on West Rainier Road, in Othello, that housed three trailers at the end of a long, dirt road. Lucia Thomas and Aaron Lidner, Sr. resided in Trailer C. Sergeant Solano's investigation involved residents other than Lidner and Thomas, but Solano noticed both parents in the yard in front of their trailer. Solano knew both from earlier conduct. Solano's sighting of both parents on September 29 relates to Lidner's notice of the conditions, in which his children lived.

2

No. 35009-6-III cons. with 35010-0-III
*In re Dependency of A.A.L.*

On November 3, 2016, Sergeant Tomas Solano also visited the trio of trailers to investigate people other than Lucia Thomas and Aaron Lidner, Sr. Solano then noticed the presence of Thomas, but not Lidner.

On November 14, 2016, Sheriff Sergeant Tomas Solano visited the trailer of Lucia Thomas and Aaron Lidner, Sr. to execute a warrant for Thomas' arrest. When Thomas answered Solano's knock on the trailer door, barefoot children and five or six stray dogs ran through the open door into the yard. Sergeant Solano smelled a disorienting, horrendous aroma emanating from the trailer. He decided not to arrest Thomas because of the presence of the children, but instead determined to return later with DSHS employees.

Later that same day, Sergeant Tomas Solano filed a report, with DSHS employee Shelby Jorgenson, that alleged the neglect of Amy and Aaron by Lucia Thomas and Aaron Lidner, Sr. The report mentioned that Thomas and Lidner held a history of methamphetamine use, Thomas actively abused drugs, an outstanding warrant directed the arrest of Thomas, and the two children resided in "horrible living conditions." Clerk's Papers (CP) at 2.

On November 15, 2016, at 11 a.m., Shelby Jorgensen and Adams County Sheriff Deputies Juan Garcia and Joe Phillips visited Lucia Thomas' trailer. Jorgensen noticed garbage, tools, children's toys, and other miscellaneous belongings littering the trailer's front yard. Jorgensen smelled a foul odor as she climbed the few steps leading to the

3

door. After Thomas answered a knock, the sheriff deputies arrested her. Thomas declared that the children's father had not visited for weeks.

Shelby Jorgensen entered the trailer and found seven dogs inside. The fusion of many foul odors thwarted Jorgensen from isolating any source of an odor. Dirty clothes, towels, diapers, pillows and dogs lay on a bed to the left of the front door. A space heater in reach of the children sat on the trailer floor. Feces mingled with silverware, toys, children's clothing, and shoes also rested on the floor. Dirty dishes, garbage, aging food, old food containers, household products, and knives packed the sink and coated the stove. A light plugged into an extension cord hung above the sink. Amy sat on a couch. Three-year-old Amy wore only a diaper, soaked with urine and feces, which drooped toward her knees. Deputy Sheriff Juan Garcia characterized the conditions inside the Thomas and Lidner home as the filthiest environment he had ever seen. Shelby Jorgenson gagged and encountered breathing difficulties inside the home.

Shelby Jorgenson transported Amy and Aaron to a foster home. At the home, Jorgenson ran and drained water from a tub multiple times to clean the children. Excrement and wounds covered their young bodies. Jorgensen counted twenty-three injuries on Aaron's body and twenty-three wounds on Amy's body.

On November 15, Shelby Jorgenson engaged in a telephone conversation with Aaron Lidner, Sr. Jorgensen told Lidner of Lucia Thomas' arrest and the placement of his two children in foster care. Jorgensen informed Lidner of the deplorable conditions,

4

in which his children lived. Lidner replied, contrary to Lucia Thomas' statement to law enforcement officers, that he had seen the children the previous weekend at a Moses Lake Park. Lidner denied the possibility that Jorgenson found the children in any deplorable condition. Lidner added that he worked at a dairy in Sunnyside and the family resided at Othello's Cimaron 5 hotel, not in a trailer.

As the telephone conversation between Aaron Lidner, Sr. and Shelby Jorgenson progressed, Lidner claimed that Amy and Aaron had recently underwent medical examinations at a local hospital. Lidner stated that he lacked any relatives who could care for the children, and he requested that Jorgensen place the children under his care. Jorgensen declined the request. Jorgenson considered Lucia Thomas and Lidner a cohesive couple, with each member knowing the conduct of the other. Jorgensen believed Lidner knew or should have known about the risks posed to his children by the care provided by Thomas. Jorgensen later contacted nearby clinics that provided well child exams and learned that Aaron's latest examination occurred eighteen months earlier and Amy underwent no examinations.

On November 21, 2016, DSHS again assigned Bonnie Gaines as Lucia Thomas' and Aaron Lidner, Sr.'s social worker. On November 28, Gaines discussed, with Lidner, living conditions at the trailer. At first, Lidner conceded he knew of the conditions of his children in the trailer, but later corrected himself and remarked that he knew not of the environment in which his children lived. Lidner claimed that he stayed, from late

5

October 2016 to early December 2016, in hotels while working on a dairy farm in Sunnyside.

In November and December 2016, Aaron Lidner, Sr. refused to participate in DSHS services unless his attorney approved of the services. Lidner agreed to submit to urinalyses to remove any suspicion of methamphetamine use, but he never provided a urine sample.

On December 8, 2016, Bonnie Gaines visited an Othello apartment where Aaron Lidner, Sr. and Lucia Thomas resided. The apartment housed only a television, mattress, and dresser, and no children's items. Gaines later sought additional visits to the apartment. Twice Gaines unsuccessfully attempted to view the apartment without advance notice, and twice she attempted to coordinate a visit with Aaron Lidner, Sr. and Lucia Thomas. Lidner answered that no one would be home.

Lucia Thomas and Aaron Lidner, Sr. received supervised visits with their children at the apartment once authorities released Thomas from prison. Lidner has visited the children only in the company of Thomas. No one has reported an unstable or unsafe environment at the apartment unit. We do not know the charges, under which law enforcement arrested Thomas on November 14, but authorities have since charged her with criminal mistreatment of her children.

### PROCEDURE

On November 17, 2016, the State filed a dependency action for Amy and Aaron.

The trial court conducted a dependency hearing on January 17, 2017.

During the dependency hearing, Aaron Lidner, Sr. testified that he did not know where his children lived in October and November of 2016. Contrary to Deputy Thomas Solano's testimony, Lidner denied ever being at or near the Othello trailer. Lidner remarked that he smokes marijuana recreationally and does not deem cannabis to be a drug. Lidner denied ever being inebriated since he was a minor.

During the dependency trial, Aaron Lidner, Sr. acknowledged the unacceptable conditions, in which officials found his children on November 15, 2016. Lidner confessed his love and support for Lucia Thomas. He lamented Thomas' lack of resources to help herself and the children. He conceded that Thomas and he still resided together in an Othello apartment. He boasted that, during the last eighteen months, he had tried to become a better father and person.

Based on testimony at the dependency hearing, the trial court ruled that Lucia Thomas abused or neglected the children pursuant to RCW 13.34.030(6)(b) and that the children were dependent, under RCW 13.34.030(6)(c), as to Aaron Lidner, Sr., because of an inability to care for the children. At the close of the hearing, the trial court commented:

> With [Aaron Lidner, Sr.] I do not find that he abused or neglected [Amy and Aaron]. I do find that he is not capable of taking care of those children . . . He lied constantly in his testimony. I believe Dep. Solano that he was there on September 29th. And he must have seen those children, must have seen their living circumstances.

7

He testified that in October the children looked fine. There is no way those children could have looked fine in October. They were scratched, they were bruised, they were filthy. He told the caseworker that he had seen the children the previous weekend, and I believe he was telling the truth at that time, and again, he could not have seen those children without knowing that they were in grave danger.

He may have a different place now, but it's very apparent to the court that he continues to—attempt to rekindle his relationship with [Lucia Thomas]. He wants to do it as we speak. And she's abusive. She hurts those children.

. . . [H]e still has no firm day care plan for those children while he's working. I would not trust him to take care of these poor little children.

. . . [T]here's no testimony that he says, "Are my children okay," "Are they sick," "Are they going to be okay." He doesn't do that. He moves into getting the children back.

I don't believe that he has shown a sufficient level of involvement with these children.

So as to [Aaron Lidner, Sr.], I make a finding . . . that he is not capable of adequately caring for the two biological children which are his.

Report of Proceedings (RP) at 121-22. The trial court entered the following written

findings:

Testimony of witnesses and photographs introduced as exhibits by the Department establish that these children were living under dangerous and repulsive conditions. They were living with their mother in a small trailer with five dogs, in an environment contaminated by garbage and feces that was completely unsafe for children. The children were filthy, neglected, and forced to live without adequate caregiving in unhygienic and inadequate circumstances that amount to almost unbelievable abuse and neglect. For his part, even though Mr. [Lidner] may not have been living in the trailer at the time the children were removed by CPS and law enforcement, he was certainly aware of the abuse and neglect to which they were being subjected. At a minimum, he was at the trailer in September and again on *November 11*. Even though he claimed that the children "looked fine" the last time he saw them, the court finds that he had to have known about the conditions in the home and did nothing about it. It is apparent to the court that it is important to him to maintain his relationship

8

with the children's mother, who the court finds has abused these children. He does not have a sufficient level of involvement and empathy for these two children; based on this, the court finds that Mr. [Lidner] is not capable of adequately caring for these children.

CP at 59 (emphasis added). The trial court ordered continued out-of-home placement for the children.

## LAW AND ANALYSIS

Only Aaron Lidner, Sr. appeals the trial court's order of dependency. He argues that insufficient evidence supports a finding as to the dependency with regard to him. He further argues that, even with a dependency, insufficient evidence supports placement of the children outside his care. We disagree.

Declaring a child "dependent" transfers legal custody to the State. *In re Dependency of Schermer*, 161 Wn.2d 927, 942, 169 P.3d 452 (2007). After the State files a dependency petition, the superior court conducts a fact-finding hearing to decide the truthfulness of the allegations. *In re Dependency of Schermer*, 161 Wn.2d at 942. The State must prove by a preponderance of the evidence that the child meets one of the statutory definitions of dependency under RCW 13.34.130. *In re Welfare of Key*, 119 Wn.2d 600, 612, 836 P.2d 200 (1992). In this case, the trial court found Amy and Aaron dependent, as to their father, under RCW 13.34.030(6)(c).

RCW 13.34.030(6)(c) declares a child "dependent" if he or she:

Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a

9

danger of substantial damage to the child's psychological or physical development.

The trial court need not consider any specific factors when determining whether a parent is capable of parenting under RCW 13.34.030(6)(c). Instead, the inquiry is highly fact-specific. *In re Dependency of Schermer*, 161 Wn.2d at 951-52.

The State need not prove that a parent is unfit to prove a dependency.

A dependency based on RCW 13.34.030[(6)](c) does not turn on parental "unfitness" in the usual sense. Rather, it allows consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs. Under RCW 13.34.030[(6)](c), it is unnecessary to find parental misconduct in order to find a child dependent.

*In re Dependency of Schermer*, 161 Wn.2d at 944. When evaluating evidence to determine whether a child is dependent, trial courts have broad discretion and considerable flexibility to reach a decision that recognizes both the welfare of the child and parental rights. *In re Dependency of Schermer*, 161 Wn.2d at 952.

Aaron Lidner, Sr. objects to the trial court's finding that he was present at the trailer on November 11. We agree that the testimony does not support this finding. Nevertheless, Lidner should have been present to protect his children from their mother, to scour the trailer of its filth, and bathe his children.

Regardless, of whether he visited the trailer in November, Aaron Lidner, Sr. claimed he saw the children the weekend before their removal. The sordid circumstances in which officials found the children and the extensive cleaning required to remove dried

10

filth from their little bodies undermines Lidner's claim that the children were fine just days prior. The deplorable condition of the children would have been noticeable if Lidner saw the children the prior weekend.

Even setting aside Aaron Lidner, Sr.'s claimed visit with the children in early November at a park, Sergeant Tomas Solano saw Lidner at the trailer on September 29. Although the State provided no evidence of the conditions inside the trailer in September, reasonable inferences establish that the children lived in similar deplorable circumstances in September.

Aaron Lidner, Sr. contends that all evidence substantiated his fathering skills as positive. The record, however, other than Lidner's vague claims, hints of no positive skills. Testimony illustrated that Lidner lacked interest in parenting his children. He refused services and refused to undergo urinalyses despite a history of drug abuse. Lidner had little, if any, contact with Lucia Thomas and his children for a year and half, which neglect led to Thomas caring alone for the children. He abandoned his two young children to an abusive and neglectful mother.

Aaron Lidner, Sr. maintains that, in the last eighteen months, he focused on reuniting the family and improving his parenting skills. Nevertheless, his actions do not comport with his claim. The evidence shows he spent little time with the family in the months preceding the dependency filing. Lucia Thomas again now lives with Lidner in his apartment, despite her two charges for the criminal mistreatment of Amy and Aaron.

11

Thomas and Lidner have a history of drug use, and their children were found by DSHS in 2016 living in a putrid trailer. If Lidner cared about the welfare of his children, he would have focused on them to the exclusion of Thomas.

Appellate review is limited to whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law. *In re Dependency of Schermer*, 161 Wn.2d at 940 (2007). Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). Appellate courts do not reweigh evidence or reassess witness credibility. *In re Welfare of X.T.*, 174 Wn. App. at 737. Appellate courts pay deference to the trial court's advantage in directly observing witness testimony first hand. *In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

We hold that substantial evidence supports the findings of fact and the findings support the dependency as to Aaron Lidner, Sr. At most, there exists conflicting accounts from Lidner and the witnesses who testified against him. Nonetheless, substantial evidence is not made any less substantial by the presence of contradictory testimony, which the trial court may have disregarded as not being credible. *Vermette v. Andersen*, 16 Wn. App. 466, 470, 558 P.2d 258 (1976). In fact, the trial court found Lidner to prevaricate.

Aaron Lidner, Sr. correctly notes that the trial court entered no express finding that

12

the children lived in danger of substantial damage to their psychological or physical development. The finding that Aaron Lidner, Sr. did not adequately care for the children, however, implied this additional finding. The evidence overwhelmingly showed a danger to the development of the children.

Aaron Lidner, Sr. next complains of the trial court's order placing custody of Amy and Aaron with DSHS. He asks that the children be returned to his care.

RCW 13.34.130(5) allows the trial court to order placement of the dependent child outside the home. The statute declares, in relevant part:

> . . . An order for out-of-home placement may be made only if the court finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home, specifying the services, including housing assistance, that have been provided to the child and the child's parent, guardian, or legal custodian, and that preventive services have been offered or provided and have failed to prevent the need for out-of-home placement, unless the health, safety, and welfare of the child cannot be protected adequately in the home, and that:
> (a) There is no parent or guardian available to care for such child;
> . . . .
> (c) The court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

RCW 13.34.130(5). In dependency proceedings, discretionary placements are reviewed for abuse of discretion. *In re Dependency of Ca.R.*, 191 Wn. App. 601, 610, 365 P.3d 186 (2015). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Marriage of Kovacs*, 121 Wn.2d 795,

13

801, 854 P.2d 629 (1993); *In re Dependency of Ca.R.*, 191 Wn. App. at 610. In any placement decision, the child's best interest should be paramount. *In re Dependency of J.B.S.*, 123 Wn.2d 1, 10, 863 P.2d 1344 (1993).

We conclude that the trial court did not abuse its discretion when it found that Amy and Aaron should be placed or remain in the custody, control, and care of DSHS and foster parents. Testimony explained that Aaron Lidner, Sr. rejected parental education and other services from DSHS. He continued to live with a mother, of the children, accused of criminal mistreatment of the children. He previously abandoned the children to the care of the mother.

## CONCLUSION

We affirm the superior court's order of dependency over Amy Lidner and Aaron Lidner, Jr. and the placement of the children in the care of DSHS.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____    _____
Korsmo, J.                          Lawrence-Berrey, J.

14